**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. ZILMA H. COLÓN, and on behalf of the STATES OF CALIFORNIA, et al., | Civil Action No. 2:22-CV-04479-GJP |
| Plaintiff-Relator, | (Judge Pappert) |
| v. | **ORAL ARGUMENT REQUESTED** |
| ZOLL MEDICAL CORPORATION and ASAHI KASEI CORPORATION, | *Motion for Leave to File Excess Pages Granted July 31, 2025 (ECF No. 31)* |
| Defendants. | |

**ZOLL MEDICAL CORPORATION'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

BACKGROUND ............................................................................................. 5

    I.    ZOLL, Sudden Cardiac Arrest, and the LifeVest .................................... 5

    II.   "Continued Use" of the LifeVest ........................................................... 7

    III.  Procedural History ................................................................................. 8

LEGAL STANDARD ................................................................................... 8

ARGUMENT ................................................................................................ 9

    I.    Relator's FCA Claims Under 31 U.S.C. § 3729(a)(1)(A)-(B)
    Should be Dismissed ................................................................................ 9

        A.    Relator Fails to Plead that ZOLL Submitted False Claims ........................ 9

        B.    Relator Fails to Sufficiently Plead Materiality ......................... 20

        C.    Relator Fails to Plead that ZOLL Acted Knowingly ................................ 23

        D.    Relator Fails to Adequately Plead a False Records claim
        under 31 U.S.C. 3729(a)(1)(B) .................................................... 25

    II.   Relator's State Law Claims Should be Dismissed ................................ 25

        A.    Relator's State FCA Claims (Counts 3, 6–13, 15–17, 19–
        35) Fail for the Same Reasons as the Federal FCA Claims .................................. 25

        B.    Relator's Claims Under the New Mexico False Claims Act
        Should be Dismissed .................................................................... 26

        C.    Relator's Claims under CIFPA and IICFPA Should be
        Dismissed (Counts 4–5, 14) ......................................................... 27

    III.  Relator's *Qui Tam* Claims Should be Dismissed as
    Unconstitutional .................................................................................... 33

CONCLUSION ............................................................................................. 34

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................8, 9

*U.S. ex rel. Askari v. PharMerica Corp.*,
No. 20 Civ. 5089, 2022 WL 4280391 (S.D.N.Y. Sept. 15, 2022) ..........................18

*Azar v. Allina Health Servs.*,
587 U.S. 566 (2019) ................................................................................................10

*U.S. ex rel. Bartlett v. Tyrone Hosp., Inc.*,
234 F.R.D. 113 (W.D. Pa. 2006) .............................................................................13

*U.S. ex rel. Behnke v. CVS Caremark Corp.*,
No. 14-cv-824, 2025 WL 1758623 (E.D. Pa. June 25, 2025)..................................25

*Bingham v. HCA, Inc.*,
783 F. App'x 868 (11th Cir. 2019) ..........................................................................31

*U.S. ex rel. Bookwalter v. UPMC*,
946 F.3d 162 (3d Cir. 2019) ....................................................................................16

*U.S. ex rel. CA Challenger LLC v. Emanate Health*,
No. 22-cv-04168, 2024 WL 4868644 (C.D. Cal. Sept. 3, 2024) .......................27, 32

*Carrel v. AIDS Healthcare Found.*,
898 F.3d 1267 (11th Cir. 2018) ...............................................................................29

*U.S. ex rel. Cestra v. Cephalon, Inc.*,
No. 14-1842, 2015 WL 3498761 (E.D. Pa. June 3, 2015)..................................26, 27

*U.S. ex rel. Druding v. Care Alts.*,
81 F.4th 361 (3d Cir. 2023) .....................................................................................21

*Edgar A. Gamboa, M.D., Med. Corp. v. Becerra*,
No. 22-CV-02865, 2023 WL 6391490 (N.D. Cal. Sept. 29, 2023) .........................12

*Finigan v. Burwell*,
189 F. Supp. 3d 201 (D. Mass. 2016) ......................................................................11

*Foglia v. Renal Ventures Mgmt., LLC*,
754 F.3d 153 (3d Cir. 2014).....................................................................................19

*U.S. ex rel. Forney v. Medtronic, Inc.*,
    No. 15-cv-6264, 2017 WL 2653568 (E.D. Pa. June 19, 2017)........................19, 20

*U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc.*,
    No. 11-cv-962, 2013 WL 2303768 (N.D. Ga. May 17, 2013)................................20

*Garrett v. Wexford Health*,
    938 F.3d 69 (3d Cir. 2019)........................................................................30

*U.S. ex rel. George v. Fresenius Med. Care Holdings, Inc.*,
    No. 12-cv-877, 2014 WL 12607797 (N.D. Ala. Mar. 31, 2014) ...........................20

*U.S. ex rel. Gharibian v. Valley Campus Pharmacy, Inc.*,
    No. 16-cv-04777, 2021 WL 4816648 (C.D. Cal. June 23, 2021) ...........................31

*U.S. ex rel. Int'l Bhd. of Elec. Workers Local Union No. 98 v. The Fairfield Co.*,
    438 F. Supp. 3d 348 (E.D. Pa. 2020) ...........................................................25

*Integra Med Analytics LLC v. Providence Health & Servs.*,
    854 F. App'x 840 (9th Cir. 2021) ................................................................16

*U.S. ex rel. Lagatta v. Reditus Lab'ys, LLC*,
    No. 22-cv-01203, 2024 WL 4351862 (C.D. Ill. Sept. 30, 2024) ...........................30

*State ex rel. Leibowitz v. Fam. Vision Care, LLC*,
    128 N.E.3d 422 (Ill. App. Ct. 2019) .............................................................28

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024)................................................................................12

*Mabey Bridge & Shore, Inc. v. Schoch*,
    666 F.3d 862 (3d Cir. 2012)......................................................................28

*U.S. ex rel. Mbabazi v. Walgreen Co.*,
    No. 19-2192, 2021 WL 4453600 (E.D. Pa. Sept. 28, 2021) ...............................23

*U.S. ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*,
    133 F.4th 395 (5th Cir. 2025) ...................................................................33

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
    812 F.3d 294 (3d Cir. 2016).......................................................................9

*U.S. ex rel. Nehls v. Omnicare*,
    No. 07 C 5777, 2011 WL 1059148 (N.D. Ill. Mar. 11, 2011) ..........................27, 28

*U.S. ex rel. PCTLS, LLC v. Nw. Mem'l Healthcare*,
No. 19-cv-00593, 2023 WL 6388328 (N.D. Ill. Sept. 29, 2023)............................................31

*U.S. ex rel. Penelow v. Janssen Prods., LP*,
No. 12-7758, 2025 WL 937504 (D.N.J. Mar. 28, 2025), *appeal docketed*, No.
25-1818 (3d Cir. Apr. 29, 2025) ............................................33

*People v. Blick*,
153 Cal. App. 4th 759 (2007) ............................................32

*U.S. ex rel. Petras v. Simparel, Inc.*,
857 F.3d 497 (3d Cir. 2017).............................................9

*U.S. ex rel. Petratos v. Genentech Inc.*,
855 F.3d 481 (3d Cir. 2017).............................................10, 12, 20, 21, 22

*In re Plavic Mktg., Sales Pracs. and Prods. Liab. Litig.*,
123 F. Supp. 3d 584 (D. N.J. 2015) ............................................17

*U.S. ex rel. Polansky v. Exec. Health Res., Inc.*,
196 F. Supp. 3d 477 (E.D. Pa. 2016) ............................................18

*Polansky v. Exec. Health Res., Inc.*,
422 F. Supp. 3d 916 (E.D. Pa. 2019), *aff'd in part, vacated in part sub nom.*,
*Polansky v. Exec. Health Res. Inc*, 17 F.4th 376 (3d Cir. 2021), *aff'd sub nom.*,
*U.S. ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023) ............................................11

*U.S. ex rel. Polansky v. Exec. Health Res., Inc.*,
599 U.S. 419 (2023)............................................33

*U.S. ex rel. Schutte v. SuperValu Inc.*,
598 U.S. 739 (2023)............................................24

*U.S. ex rel. Shannon v. Penn State Health St. Joseph Reg'l Health Network*,
No. CV 21-2351, 2025 WL 984353 (E.D. Pa. Mar. 31, 2025)............................................10, 19, 26

*U.S. ex rel. Sheldon v. Forest Lab'ys, LLC*,
754 F. Supp. 3d 615 (D. Md. 2024), *appeal docketed sub nom.*, *U.S. ex rel.*
*Sheldon v. Allergan Sales, LLC*, 24-1793 (3rd Cir. Aug. 15, 2024) ............................................24, 25

*U.S. ex rel. Silver v. Omnicare, Inc.*,
903 F.3d 78 (3d Cir. 2018)............................................16

*U.S. ex rel. Simpson v. Bayer Corp.*,
No. 05-3895, 2015 WL 1190160 (D. NJ. Mar. 16, 2015) ............................................17

v

*U.S. ex rel. Sirls v. Kindred Healthcare, Inc.*,
469 F. Supp. 3d 431 (E.D. Pa. 2020) ....................................................21

*U.S. ex rel. Sirls v. Kindred Healthcare, Inc.*
517 F. Supp. 3d 367 (E.D. Pa. 2021) ....................................................17

*State v. Harden*,
938 So. 2d 480 (Fla. 2006)....................................................................29

*U.S. ex rel. Stebbins v. Jefferson Cardiology Ass'n, P.C.*,
No. 21-cv-01803, 2023 WL 11823352 (W.D. Pa. Feb. 10, 2023)..........13

*U.S. ex rel. Streck v. Allergan, Inc.*,
894 F. Supp. 2d 584 (E.D. Pa. 2012), *aff'd* 746 F. App'x. 101 (3d Cir. 2018) ......................23

*U.S. ex rel. Streck v. Allergan, Inc.*,
746 F. App'x. 101 (3d Cir. 2018) ..........................................................24

*U.S. v. Blair*,
No. 19-00410, 2021 WL 4339132 (D. Md. Sept. 23, 2021)...................29

*U.S. v. Borrasi*,
639 F.3d 774 (7th Cir. 2011) ................................................................29

*U.S. v. Chang*,
No. CV 13-3772, 2017 U.S. Dist. LEXIS 226194 (C.D. Cal. July 25, 2017) ......................28

*U.S. v. Crescendo Bioscience, Inc.*,
No. 16-cv-02043, 2020 WL 2614959 (N.D. Cal. May 23, 2020)...........31

*U.S. v. Crinel*,
No. 15-61, 2015 WL 3755896 (E.D. La. June 16, 2015)........................29

*U.S. v. Kaiser Found. Health Plan, Inc.*,
No. 12-cv-03896, 2013 WL 4605096 (C.D. Cal. Aug. 28, 2013) ..........18

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
579 U.S. 176 (2016)..............................................................5, 8, 20, 21

*Whitcomb v. Burwell*,
No. 13–CV–990, 2015 WL 3397697 (E.D. Wis. May 26, 2015) ..........11

*State ex rel. Wilson v. Super. Ct.*,
227 Cal.App.4th 579 (2014) ..................................................................30

*Wis. Bell, Inc. v. U.S. ex rel. Heath*,
    145 S. Ct. 498 (2025) ..................................................................................33

*U.S. ex rel. Zafirov v. Fla. Med. Assocs., LLC*,
    751 F. Supp. 3d 1293 (M.D. Fla. 2024), *appeal docketed*, Nos. 24-13581, 24-
    13583 (11th Cir. Oct. 30, 2024) ...................................................................33

**Statutes**

31 U.S.C. § 3729 ..................................................................................1, 9, 23, 25

31 U.S.C. § 3730 .............................................................................................8

42 U.S.C. § 1320a-7b ..................................................................................27, 28

42 U.S.C. § 1395hh .........................................................................................10

42 U.S.C. § 1395y ........................................................................................7, 10

740 Ill. Comp. Stat. 92/5 .............................................................................27, 29

740 Ill. Comp. Stat. 92/45 ...............................................................................32

Cal. Ins. Code § 1871.7 .......................................................................27, 28, 29, 32

Cal. Penal Code § 550 ...................................................................................27, 31

Md. Code Ann., Health Gen. § 2-604(a)(7) .............................................................26

Medicare Prescription Drug, Improvement, and Modernization Act, Pub. L. No.
    108-173, 117 Stat. 2066 (2003) (codified at 42 U.S.C. §§ 1395w-21, *et seq.*) ........................4

N.M. Stat. Ann § 27-14-1, *et seq.* .......................................................................26

**Other Authorities**

42 C.F.R. § 1001.952(i) ...................................................................................29

Fed. R. Civ. P. 4(m) .........................................................................................1

Fed. R. Civ. P. 8 .........................................................................................*passim*

Fed. R. Civ. P. 9(b) .....................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ...........................................................................1, 8, 9, 20

U.S. Const. art. II .........................................................................................33

Defendant ZOLL Medical Corporation ("ZOLL") respectfully submits this memorandum of law in support of its motion to dismiss Relator Zilma Colón ("Relator")'s Amended Complaint ("AC") (ECF No. 11) under Fed. R. Civ. P. 12(b)(6), 9(b), and 8(a).[1]

This case involves the LifeVest ® ("LifeVest"), a wearable cardiac defibrillator ("WCD") manufactured and distributed by the Defendant, ZOLL. The LifeVest provides immediate lifesaving care to patients experiencing sudden cardiac arrest ("SCA"), an electrical disturbance of the heart's rhythm that is fatal if not treated immediately through defibrillation. The LifeVest detects and treats potentially fatal rhythms by shocking the heart back into a normal rhythm. Unlike other types of durable medical equipment ("DME") that provide continuous therapy for chronic conditions and are designed for long-term use, such as a Continuous Positive Airway Pressure ("CPAP") device, the LifeVest is a critical lifesaving "bridge" device designed for short-term use to protect patients in the event of SCA until their hearts heal or they become eligible for an implantable cardioverter defibrillator ("ICD"). Each patient is individually fit with the LifeVest pursuant to their physician's prescription. Most patients receive a prescription for three months, and some patients will receive a re-order if their physician determines they need the LifeVest for longer than the initial prescription. *See* ¶¶ 97–98, 183-84.

The United States and the various states declined to intervene in Relator's claims under the federal False Claims Act (31 U.S.C. §3729 ("FCA")) and state statutes after investigating them, and Relator now proceeds on her own on behalf of the United States and the states. She contends

---

[1] The Amended Complaint also names ZOLL's parent company, Asahi Kasei Corporation ("Asahi"), as a defendant in this case. Relator's counsel has informed ZOLL that Relator intends to file a notice of voluntary dismissal as to Asahi once they obtain consent from the relevant federal and state sovereigns, which ZOLL understands is underway. Relator has not served the Amended Complaint on Asahi or sought a waiver of service from Asahi; this failure of service is itself grounds for dismissal as to Asahi. FED. R. CIV. P. 4(m).

that ZOLL violated the federal and state FCAs by submitting claims to Government payors where physicians prescribed the LifeVest because they determined the device was medically necessary, but where patients were not wearing the device as extensively as the treating physician and ZOLL recommended. Relator claims that ZOLL violated sub-regulatory guidance on "continued use."

Relator's claims must be dismissed. Relator has not provided plausible or particularized allegations demonstrating that false claims were submitted by ZOLL. First, the continued use standard on which Relator predicates her claims derives exclusively from sub-regulatory guidance promulgated by The Centers for Medicare & Medicaid Services ("CMS")'s Medicare Administrative Contractors ("MACs"), which is not a proper basis for fraud claims against the company. Second, the standard contained in that guidance is different from what Relator suggests. Relator conjures up a continued use standard that is found nowhere in any law or even in the sub-regulatory guidance on which she relies, and the Court need not go further in order to dismiss her claims. Moreover, the actual continued use standard contained in the guidance has been satisfied by ZOLL here. Relator's claims must be dismissed because she has not pleaded the essential FCA element of falsity, as well as other mandatory elements of her claims.

ZOLL encourages patients to wear the LifeVest as much as possible (24 hours a day except when bathing) during the typical 3-month physician-prescribed period, but CMS recognizes that not all patients will do that. As such, CMS has not imposed specific use requirements for the LifeVest. Relator disregards this core fact. For other devices, like CPAPs, CMS has chosen to impose specific (and even hourly and daily) use requirements, presumably because CMS has determined that such levels of utilization confer a clinical benefit. LCD 33718, *Positive Airway Pressure (PAP) Devices for the Treatment of Obstructive Sleep Apnea* (requiring "use of PAP ≥4 hours per night on 70% of nights during a consecutive thirty (30) day period anytime during the

first three (3) months of initial usage").[2] CMS could have, but did not, impose a specific continued use requirement for the LifeVest.

Instead, Relator is relegated to relying on guidance that applies generally to DME (i.e., not specific to the LifeVest), which says that a patient must continue to use a device (without any specified use requirements) in order for Medicare to continue paying for the device on a monthly basis. *See* LCA A55426, *Standard Documentation Requirements for All Claims Submitted to DME MACs* (the "Article"). However, a purported violation of a local coverage article, a form of sub-regulatory guidance, is not sufficient to establish falsity because it did not undergo notice-and-comment rulemaking as required by the Medicare Act. Even if the Article were an appropriate basis for claims (it is not), as the AC shows, Relator's interpretation of the guidance *completely ignores a central provision*, which says that claims may be submitted if a record of utilization exists within the preceding twelve (12) months. *Id.* ("Timely documentation is defined as a ***record in the preceding 12 months*** …." (emphasis added)). Relator has not alleged that ZOLL violated even this guidance, let alone any legal requirement. This is fatal to her claims.

Relator apparently wants more utilization of the LifeVest than the Article's guidance contemplates, and she therefore has devised her own "requirement" that CMS (and all other

---

[2] *See also* LCD L34823, *Tumor Treatment Field Therapy ("TTFT")* (for coverage beyond the first three months, requiring "the use of TTFT for an average of 18 hours per day (excluding days the treating practitioner has documented a medical need to limit or interrupt treatment)"); LCD 33821, *Negative Pressure Wound Therapy Pumps* (requiring monthly documentation of changes in the ulcer's dimensions or characteristics); LCD L39591, *External Upper Limb Tremor Stimulator Therapy* (for coverage after three months, requiring use of the device on "70% of the days during a consecutive thirty (30) day period anytime during the first three (3) months of initial use").

Government payors) will not pay for the LifeVest if the patient is not wearing it basically all the time. Relator essentially argues that the manufacturer's recommended use of the LifeVest somehow establishes a continued use standard required by CMS, but this is false. Relator's ill-conceived and erroneous utilization "requirements" would have ZOLL confiscating critical lifesaving devices from acute cardiac patients if even a day passed that they did not use the device. This dangerous proposition is not the standard required by CMS or any other payor for obvious and good reasons, and this case should not proceed into discovery based on Relator's wholesale distortions of the applicable requirements for utilization of the LifeVest.

Moreover, the Article applies only to Medicare Fee-For-Service ("FFS")[3] claims. As to other payors to whom Relator contends false claims were submitted (i.e., Medicare Advantage, state Medicaid programs, managed care payors of Medicaid benefits, TRICARE, the Department of Veterans Affairs (the "VA"), and the Federal Employee Health Benefits Program (the "FEHBP")), Relator makes the conclusory assertion, without any support, that all of these payors follow the Medicare FFS guidance set forth in the Article. But (a) none of those payors are governed by the Article, (b) Relator is wrong as a matter of law that they all reflexively follow the terms of the Article, and (c) Relator has not identified any guidance promulgated by these other payors, much less explained how ZOLL violated it. For this reason, Relator's claims for purported fraud on each of these other payors must also be dismissed.

In a separate but related failure, Relator *only* identifies examples of patients covered by

---

[3] Medicare FFS is sometimes referred to as "original Medicare" or Medicare Part B, and it is separate from the Medicare Advantage program, or Medicare Part C, through which private insurers administer Medicare benefits. Medicare Prescription Drug, Improvement, and Modernization Act, Pub. L. No. 108-173, 117 Stat. 2066 (2003) (codified at 42 U.S.C. §§ 1395w-21, *et seq.*).

Medicare in her Amended Complaint (and she fails to identify whether the patient is a Medicare FFS beneficiary or instead a member of a Medicare Advantage plan). She identifies no patients covered by any other state or federal payor. She fails to satisfy the particularity requirement of Fed. R. Civ. P. 9(b) as to any claims submitted to payors other than Medicare.

Relator purports to bring a nationwide case, but she provides no details that meet the particularity requirements that would justify such a broad, sweeping lawsuit. Relator worked in a particular territory—a part of Puerto Rico—and she fails to identify the location of a single patient who supposedly was not using their LifeVest (in accordance with her incorrect standards); she certainly has not justified nationwide claims.

Relator's claims must be dismissed for numerous additional reasons, including that she has failed to plead the essential FCA element of materiality, relying only on boilerplate assertions that fail as a matter of law under *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 193–96 (2016). Relator has also failed to plead the element of knowledge where ZOLL's interpretation of the Article's continued use guidance was reasonable based on the Article's plain language. Relator's state law claims must be dismissed for failure to plead violations of the state FCAs, most of which track the federal FCA and some of which have unique requirements that provide additional grounds for dismissal of Relator's claims. Finally, Relator has also failed to plead violations of the kickback provisions of the California and Illinois insurance fraud prevention statutes, which, in any event, are preempted by the federal Anti-Kickback Statute ("AKS").

## BACKGROUND

### I.  ZOLL, Sudden Cardiac Arrest, and the LifeVest

ZOLL manufactures and sells durable medical equipment ("DME") primarily intended for the acute critical care setting, including products for defibrillation, cardiac monitoring,

5

ventilation, circulation enhancement and CPR feedback, supersaturated oxygen therapy, and sleep apnea. AC ¶ 18. The LifeVest, ZOLL's WCD, is one of only two WCDs currently available in the United States. *Id*. ¶¶ 18, 107. Relator is a former Territory Manager (i.e., sales representative) for the LifeVest in southwest Puerto Rico. *Id.* ¶ 17.

SCA is a leading cause of death in the United States, killing hundreds of thousands of people every year. *Id.* ¶ 75. While a heart attack is caused by blockages in the arteries, SCA is caused by electrical malfunctions in the heart, leading to extremely rapid and abnormal heartbeats (ventricular fibrillation ("VF") and ventricular tachycardia ("VT")). *Id.* ¶¶ 75–77, 110. SCA, which can occur without warning, results in immediate cessation of breathing and consciousness and can lead to death within minutes unless emergency treatment (defibrillation or CPR) is started immediately. *Id.* ¶¶ 81, 105, 110. Patients with pre-existing heart conditions, most commonly a previous heart attack, are most at risk for SCA. *Id.* ¶¶ 78–80.

The LifeVest is comprised of a wearable garment, which houses a defibrillator. *Id.* ¶ 7. It monitors the patient's heart rhythm continuously to deliver an external shock if the patient develops VT or VF. *Id.* ¶ 97. Because SCA can happen at any time and without warning, ZOLL recommends that LifeVest patients wear the device at all times, even while sleeping, and to only remove it when bathing. *Id.* ¶ 105.

The LifeVest is a short-term and "temporary" lifesaving device designed to provide protection to patients from SCA and death while the patient awaits an ICD or to allow time for improvement of their heart condition through other treatments. *Id.* ¶ 97. "Patients who may qualify for a WCD are those at high-risk for SCA who often find themselves in situations where implantation of an ICD or other long-term preventative care is not immediately feasible." *Id.* ¶ 101. For example, patients who recently experienced a heart attack and are at high risk for SCA

are not eligible to receive an ICD until 40 days after the heart attack, or 90 days where the patient also received an angioplasty or certain other procedures. *Id.* The LifeVest is thus a critical gap-filling component in the continuum of care for acute cardiac patients. *See id.* ¶¶ 101–02. Unlike CPAPs and other DME intended for chronic conditions, the LifeVest does not provide any continuous therapy to the patient but instead saves the patient's life if they experience onset of VF or VT. *Id.* ¶¶ 110–12.

## II.  "Continued Use" of the LifeVest

In order for Medicare to cover a DME rental, the device must be "reasonable and necessary." *Id.* ¶ 42 (citing 42 U.S.C. §§ 1395y(a)(1)(A)–(B)). There is no allegation here that any patient either did not meet medical eligibility criteria or did not *need* the LifeVest. Relator concedes this point. *See, e.g.,* AC ¶¶ 125, 195.

Relator's allegations concern only the issue of continued use, *i.e.*, whether patients were sufficiently wearing their LifeVests during the course of their prescription. AC ¶¶ 125, 138. There is no statute or regulation containing a "continued use" requirement for the LifeVest, which is why Relator points instead to payor guidance documents. As to those, there is no "continued use" guidance designed specifically for the LifeVest, unlike several other types of devices. *See* p. 2-3, *supra.*

Medicare Local Coverage Determination ("LCD") 33690, *Automatic External Defibrillators*, which is the LCD applicable to the LifeVest, is silent about continued use and instead points to the continued use documentation guidance in the Article, which applies generally to all DME. AC ¶ 131. As discussed more fully in Section I.A.2 below, the Article requires only that a DME supplier obtain timely documentation of use, which the Article defines as documentation from the preceding 12 months, and it does not contain any specific measurement

of use. LCA A55426; AC ¶ 132. The Article lists a number of different types of documentation that can show use, including documentation in the medical record, requests for refill/replacement of supplies, and documentation showing beneficiary confirmation of use. LCA A55426; AC ¶ 132. Notably, Relator's claims are entirely based on only one form of documentation—data taken from the ZOLL Patient Management ("ZPM") network, a software application (which it is undisputed that ZOLL is not required to provide) that receives transmissions from patients' LifeVests, AC ¶ 139, provided the patient is properly connected to the internet. Absent from the AC is *any* mention of the other forms of documentation that CMS recognizes as evidence of use or even any acknowledgment of the existence of ZPM data as a record of use within 12 months, as the guidance contemplates.

## III.  Procedural History

The Government investigated Relator's claims pursuant to the FCA's statutory requirements, 31 U.S.C. § 3730(a), and similar state provisions. After investigating, the Government (the United States and the various states) declined to intervene. ECF Nos. 16, 19. Relator pursues the claims on her own.

## LEGAL STANDARD

Under Rule 12(b)(6), the Court must dismiss a complaint that "fails to state a claim on which relief may be granted." FED. R. CIV. P. 12(b)(6). Because the FCA is an anti-fraud statute, Relator's Amended Complaint must satisfy both Rule 8's plausibility standard as well as Rule 9(b)'s heightened particularity requirement. *Escobar*, 579 U.S. at 195 n.6.

Under Rule 8, Relator must go beyond reciting the elements of a claim and instead must set forth a "plausible claim for relief." FED. R. CIV. P. 8; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim is facially plausible only when the complaint contains sufficient factual allegations

for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Where well-pleaded factual allegations (and *reasonable* inferences drawn from them) fail to sufficiently address every required element of the cause of action asserted, that claim should be dismissed. *See id.*

Under Rule 9(b)'s heightened pleading requirements, Relator must state with particularity the circumstances constituting fraud. FED. R. CIV. P. 9(b); *U.S. ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 502 (3d Cir. 2017). In other words, Relator must state "the who, what, when, where and how" of the alleged fraud. *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quotations omitted).

## ARGUMENT

## I. Relator's FCA Claims Under 31 U.S.C. § 3729(a)(1)(A)-(B) Should be Dismissed

Relying on incorrect and incomplete interpretations of sub-regulatory guidance, Relator alleges that ZOLL submitted false claims for reimbursement to Government payors for monthly rentals of the LifeVest that she contends patients were not using enough based solely on her own subjective (and erroneous) standard for continued use of the LifeVest. *See, e.g.*, AC ¶¶ 4, 242–47 (Count 1, citing 31 U.S.C. § 3729(a)(1)(A)). Relator also tacks on a "false records" claim under 31 U.S.C. § 3729(a)(1)(B). AC ¶¶ 248–53 (Count 2). Each claim must be dismissed pursuant to Rules 8(a), 9(b), and 12(b)(6). *See also infra* Argument Section II (addressing Relator's state FCA claims, which should be dismissed for the same reasons as the federal claims).

### A. Relator Fails to Plead that ZOLL Submitted False Claims

To state a cause of action under § 3729(a)(1)(A), a relator must allege facts showing: "(1) the defendant presented a false claim for payment to the United States; (2) the defendant knew the claim was false; (3) the false claim or false statement in support of the claim was material to the

9

payment decision; and (4) the false claim caused the government to pay the claim." *U.S. ex rel. Shannon v. Penn State Health St. Joseph Reg'l Health Network*, No. CV 21-2351, 2025 WL 984353, at *4 (E.D. Pa. Mar. 31, 2025) (citations omitted); *accord U.S. ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 487 (3d Cir. 2017) (citations omitted). Relator has failed to sufficiently allege falsity, knowledge, and materiality. Her failure to plead even one of these independent elements requires dismissal. Here, she has failed to plead all of them.

### 1. *Relator's Reliance on the Article's Requirements is Improper and Misplaced*

#### a. *Relator cannot rely on sub-regulatory guidance to establish falsity*

There is no continued use requirement set forth in Medicare's "reasonable and necessary" statute, 42 U.S.C. §§ 1395y(a)(1)(A)–(B), or any other statute or regulation. Relator instead relies exclusively on purported violations of the Article as the basis for her claims. AC ¶¶ 132–38. However, the Article is sub-regulatory guidance that did not undergo notice-and-comment rulemaking as required by the Medicare Act. *See Azar v. Allina Health Servs.*, 587 U.S. 566, 568 (2019). Relator is prohibited from relying on it as a basis for her FCA and analogous state claims.

The Medicare Act requires that CMS engage in notice-and-comment rulemaking before adopting a "rule, requirement, or other statement of policy … that establishes or changes a *substantive legal standard*." 42 U.S.C. § 1395hh(a)(2) (emphasis added). The Supreme Court in *Allina* clarified that, to be enforceable, even informal "guidance," i.e., sub-regulatory instructions for complying with statutes and regulations, must still go through the notice-and-comment rulemaking process under the Medicare Act (even if not required under the Administrative Procedures Act ("APA")) if the guidance articulates a "substantive legal standard" governing access to benefits. 587 U.S. at 576–79.

Following *Allina*, the court in the FCA case of *Polansky v. Exec. Health Res., Inc.*, adopted the D.C. Circuit in *Allina's* definition of "substantive legal standard," which "at a minimum include[s] a standard that creates, defines, and regulates the rights, duties, and powers of parties," and found that the 24-hour inpatient reimbursement standard at issue in that case was a "substantive legal standard" because it "affected a hospital's right to payment," setting the "standard by which a hospital's entitlement to higher reimbursement rate for inpatient claims [was] assessed." 422 F. Supp. 3d 916, 931–36 (E.D. Pa. 2019) (citing *Allina Health Servs. v. Price*, 863 F.3d 937, 943 (D.C. Cir. 2017)), *aff'd in part, vacated in part sub nom., Polansky v. Exec. Health Res. Inc*, 17 F.4th 376 (3d Cir. 2021), *aff'd sub nom., U.S., ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023). The court held that the defendant could not have violated the FCA as to those claims because the guidance was contained in agency manuals that had not been promulgated pursuant to notice-and-comment rulemaking. *Id.* at 936.

Similarly, here, an FCA claim cannot be based on a violation of the Article at issue. Before the Court even reaches the issue of Relator's misinterpretation of the Article on which her theory of falsity depends, the Article is a "substantive legal standard"—it purports to impose substantive conditions, including with respect to the type of continued use documentation that is necessary to exist for DME claims to be reimbursed—but it did not go through notice-and-comment rulemaking. *See id.* at 934–36. Nor can Relator claim that the Article simply expounds on the "reasonable and necessary" requirement of the statute, particularly where the statute makes no mention whatsoever of supplier obligations to monitor utilization of DME. *See Finigan v. Burwell*, 189 F. Supp. 3d 201, 207 (D. Mass. 2016) (noting that a policy article "does not make reasonable and necessary determinations"); *Whitcomb v. Burwell*, No. 13–CV–990, 2015 WL 3397697, at *3–4 (E.D. Wis. May 26, 2015) (discussing limitations of policy articles).

*b. Relator's reliance on the Article is also not entitled to deference.*

Even if the Court determines that the Article is an interpretation of Medicare's "reasonable and necessary" requirement as opposed to a substantive legal standard, the Article is not entitled to any deference. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024) (holding that courts need not, and under the APA may not, defer to an agency's interpretation of the law simply because a statute is ambiguous"); *cf. Edgar A. Gamboa, M.D., Med. Corp. v. Becerra*, No. 22-CV-02865, 2023 WL 6391490, at *6 (N.D. Cal. Sept. 29, 2023) (limited deference to coverage articles even prior to *Loper Bright*).

Nothing about the "reasonable and necessary" statute suggests that a supplier has an obligation to monitor utilization when a prescriber has already deemed that the device is medically necessary. "Reasonable and necessary," as used in the Medicare statute, is a need-based concept that has long been understood to be tied to whether, in a healthcare provider's medical judgment, a patient has a medical need for therapy. *See, e.g., Petratos*, 855 F.3d at 488–89 (interpreting the Medicare statute and explaining that "doctors are best suited to evaluate each patient and determine whether a treatment is 'reasonable and necessary *for [that] individual patient*'") (quoting Medicare Benefit Policy Manual, ch. 15, § 50.4.3(italics in original)). Here, Relator concedes that patients need the LifeVest. *See, e.g.*, AC ¶¶ 125, 195. The imposition of a requirement on a DME supplier to monitor utilization notwithstanding the presence of a valid physician order or reorder does not naturally or obviously flow from any statutory language, and as such, Relator has not pleaded a violation of the "reasonable and necessary" requirement. Her claims must be dismissed.

## 2. *The Article Requires Documentation of Use Once Within the Preceding 12 Months, and Relator Has Not Identified Any Claims That Do Not Satisfy This Standard*

Even if the Article could be a basis for claims, the Amended Complaint does not, in fact, allege that it was violated. For this additional reason, Relator has failed to allege the essential element of falsity, and her FCA and associated state law claims must be dismissed. *See U.S. ex rel. Bartlett v. Tyrone Hosp., Inc.*, 234 F.R.D. 113, 124 (W.D. Pa. 2006) ("Evidence of an actual false claim is 'the *sine qua non* of a False Claims Act violation.'" (cleaned up and emphasis added)).

Again, Relator concedes that all patients who are at issue in this case needed the LifeVest. *See, e.g.*, AC ¶¶ 125, 195. She challenges only the extent to which these patients used the LifeVest once it was in their possession. *See, e.g., id*. at ¶ 138. The apparent "standard" she articulates is as follows:

> Relator diligently searched through ZOLL's ZPM database for compliant patients that were accurately billed by ZOLL: patients who wore their LifeVest continuously, 24 hours a day for a specific period of time and then ZOLL billed a Government Funded Healthcare Program, for approximately the same number of days that the patient wore the LifeVest.

AC ¶ 161.

As an initial matter, the LifeVest is billed monthly, not daily, and there is no pro rata adjustment made for the number of days worn in a given month. AC ¶ 127 (acknowledging ZOLL bills on a monthly basis); *see also* Medicare Claims Processing Manual, Chapter 20, Section 30.5.4.[4] Beyond that, Relator's purported standard is not found in the guidance on which her claims

---

[4] As a record or a report of an administrative body, this Court can take judicial notice of this manual in deciding ZOLL's motion to dismiss. *See U.S. ex rel. Stebbins v. Jefferson Cardiology Ass'n, P.C.*, No. 21-cv-01803, 2023 WL 11823352, at *2 (W.D. Pa. Feb. 10, 2023) (taking judicial notice of the existence and contents of document published on CMS's website, including a Medicare National Coverage Determinations Manual).

are based. Having devised a "daily wear" payment standard which aligns with ZOLL's recommended use for the LifeVest but which is not required by or even mentioned in any law, regulation, or sub-regulatory guidance, Relator's claims must be dismissed, and the Court need not go further. Beyond that, Relator has failed to plead a violation of the guidance that *does* exist (nor can she because ZOLL satisfies it), and her claims must be dismissed for that reason as well.

As discussed above, there is no policy specifically applicable to the LifeVest that addresses "continued use." This is in sharp contrast to other types of DME, for which Medicare has developed specific continued use guidance. For example, for CPAP devices, Medicare requires "use of PAP ≥4 hours per night on 70% of nights during a consecutive thirty (30) day period anytime during the first three (3) months of initial usage." LCD 33718 (CPAP).[5] Such a requirement is imposed on the CPAP because absent such use, the patient will not receive the clinical benefits of the device. *Id.* (noting that for coverage after three months, the treating practitioner must document that patient's sleep apnea symptoms have improved with use). Conversely, the LifeVest does not improve a patient's condition over time with use—rather, it is a safety net that the patient benefits from any time they wear it, even if it is worn less than "24/7." *See, e.g.*, AC ¶ 7 ("When it is being worn, the LifeVest saves lives."). Unlike with a CPAP and several other devices, Medicare intentionally declined to impose any specific continued use requirement for the LifeVest, though it could have.

Instead, as Relator herself concedes, the only relevant Medicare guidance at issue here begins with the LCD applicable to both wearable and non-wearable automatic external defibrillators. *See* LCD 33690. The LCD does not address the topic of continued use at all. Instead,

---

[5] *See supra* n. 4 (judicial notice appropriate).

the LCD cross-references the Article referenced in Background Section II above, which lays out the continued use documentation requirements for DME generally (i.e., not specific to the LifeVest or even to defibrillators). *See* LCA A55426. The Article focuses, as its name suggests, on what documentation must exist to support submission of claims. *Id.* On the issue of "Continued Use," the Amended Complaint accurately quotes the Article, but ignores a key provision (highlighted):

CONTINUED USE

Continued use describes the ongoing utilization of supplies or a rented item by a beneficiary.

Suppliers are responsible for monitoring utilization of DMEPOS rental items and supplies. No monitoring of purchased items or capped rental items that have converted to a purchase is required. Suppliers must discontinue billing Medicare when rental items or ongoing supply items are no longer being used by the beneficiary.

Beneficiary medical records or supplier records may be used to confirm that a DMEPOS item continues to be used by the beneficiary. Any of the following may serve as documentation that an item submitted for reimbursement continues to be used by the beneficiary:

- Timely documentation in the beneficiary's medical record showing usage of the item, related option/accessories and supplies;
- Supplier records documenting the request for refill/replacement of supplies in compliance with the REFILL DOCUMENTATION REQUIREMENTS section. This is deemed sufficient to document continued use for the base item, as well;
- Supplier records documenting beneficiary confirmation of continued use of a rental item.

Timely documentation is defined as a record in the preceding 12 months unless otherwise specified elsewhere in this policy.

*Id.* (emphasis added).

Thus, CMS's MAC states that if there is documentation of use from the preceding 12 months prior to a claim, that is sufficient. Beyond that, the Article is silent as to the degree of use that is required, in contrast to other forms of DME. However, *Relator has not alleged that a record of use contemplated by the Article does not exist for a single patient.* Instead, Relator's chart of 50 patients (AC ¶ 156) seems to suggest that compliance with the continued use documentation guidance is measured by comparing the total number of days the LifeVest was allegedly used with the total number of months billed by ZOLL. That "standard," however, is not found in the Article or anywhere else. Relator cannot conjure her own subjective continued use standard for the LifeVest and then cry fraud.

Moreover, for 48 of the 50 patients, Relator concedes there is evidence of use and does not allege that this evidence fell outside the 12-month time period, nor could she: according to Relator's depiction of the billing history for these patients, they all had the LifeVest for less than 12 months, meaning there could not possibly be records outside the 12-month window. AC ¶ 156.

With respect to the two patients Relator implausibly alleges had "0" days of use, AC ¶ 156, Relator bases that assertion solely on the data from the ZPM (a database ZOLL is not even required to have), *Id.* ¶ 138, while simply ignoring the other forms of documentation of continued use the Article contemplates, such as documentation of use in the physician's medical record, requests for refill or replacements of supplies, or beneficiary confirmation of use. LCA A55426. Relator admits that the ZPM is the only documentation she reviewed. *Id.* ¶ 145. Her AC contains no allegations that she even attempted to access these other records. She instead merely assumes such records do not exist. Relator's allegations do not cross the line from possible to plausible where she completely fails to address, *or even allege*, that these alternative forms of documentation are lacking. *U.S. ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 168 (3d Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) ("If the allegations are 'merely consistent with' misconduct, then they state no claim"); *see also U.S. ex rel. Silver v. Omnicare, Inc.*, 903 F.3d 78, 92 (3d Cir. 2018) ("[A]n inference of illegality based on facts that could plausibly have either a legal or illegal explanation would be insufficient to meet Rule 9(b)'s burden," noting that "the possibility of a legitimate explanation undermines the strength of the inference of illegality." (citation and internal quotations omitted)); *Integra Med Analytics LLC v. Providence Health & Servs.,* 854 F. App'x 840, 844 (9th Cir. 2021) (holding relator failed to state plausible claim for violation of FCA without eliminating obvious alternative explanation).

In short, because Relator has not alleged that any patient lacked a record of use within the 12 months prior to a claim, she has not alleged that the Article's requirement was violated. She has not alleged falsity, and her claims must be dismissed. To the extent the Court credits Relator's assertion that all other payors follow the Medicare guidance, Relator's claims based on those payors must likewise be dismissed.

### 3. *Relator Fails to Plead That Any Other Payor's Requirements Were Violated*

Relator alleges that ZOLL also submitted false claims to other Government payors besides Medicare FFS (e.g., Medicare Advantage, Medicaid, managed Medicaid, TRICARE, the VA, and the FEHBP). But the Article that is the basis for her claims does not apply to these payors. *See* LCA A55426. Relator's claims involving these other payors must be dismissed for failure to even identify their purported continued use requirements, much less explain how they were violated.

In FCA cases involving multiple payors, a relator bears the burden of articulating with specificity the precise rules of each payor to whom the relator contends false claims were submitted. *See, e.g., U.S. ex rel. Sirls v. Kindred Healthcare, Inc.* 517 F. Supp. 3d 367, 389–91 (E.D. Pa. 2021) (dismissing FCA claims based on the failure to identify relevant information about the states' reimbursement rules); *In re Plavic Mktg., Sales Pracs. and Prods. Liab. Litig.*, 123 F. Supp. 3d 584, 610 (D.N.J. 2015) ("[I]n other words, there are no allegations relating to the types of restrictions that have been placed on prescription drug coverage by those states during the relevant time period."); *U.S. ex rel. Simpson v. Bayer Corp.*, No. 05-3895, 2015 WL 1190160, at *9–10 (D.N.J. Mar. 16, 2015) (dismissing FCA claims under Medicaid, TRICARE/CHAMPUS, and CHAMPVA because pleadings did not provide specific provisions related to whether these payors could withhold payment based on alleged conduct).

To put a finer point on it, where a claim is based on a violation of a law or guidance, Relator must actually identify the law or guidance that was violated and explain how it was violated. *See U.S. ex rel. Askari v. PharMerica Corp.*, No. 20 Civ. 5089, 2022 WL 4280391, at *5 (S.D.N.Y. Sept. 15, 2022) ("Specifically … Askari does not identify any controlling statute or regulation that Defendants violated as a result of the conduct alleged in the FAC. ... This infirmity is fatal to his complaint."); *U.S. v. Kaiser Found. Health Plan, Inc.*, No. 12-cv-03896, 2013 WL 4605096, at *6 (C.D. Cal. Aug. 28, 2013) (dismissing FCA claim where the complaint did "not identify which law, rule or regulation Kaiser undertook to comply with").

Relator opaquely alleges that the other Government Payors have the same continued use guidance as the Medicare FFS Article. AC ¶ 72. Relator, however, provides no details or citation to substantiate this claim, and she is not entitled to have conclusory assertions about other payors' rules credited. *See U.S. ex rel. Polansky v. Exec. Health Res., Inc.*, 196 F. Supp. 3d 477, 505–06 (E.D. Pa. 2016) (finding "[r]elator's single generalized allegation that most states recognize the same or comparable distinctions between inpatient and outpatient patient status insufficient to allege falsity under the requirements of dozens of state Medicaid programs") (cleaned up). And, even if the Court were to credit Relator's bald assertion, Relator has not alleged that ZOLL violated the Article, in any event. *See supra* Argument Section I.A.2.

Without any description of a single coverage criteria applicable to these other Government payors, Relator's Amended Complaint must be dismissed to the extent they concern these payors.

### 4. *Relator Fails to Plead with Specificity That Any Claims Were Submitted to Payors Other Than Medicare*

In addition to failing to identify the *guidance* of any of the non-Medicare FFS payors who she contends were purportedly defrauded, Relator compounds the problem by failing to identify

any *patients* covered by payors other than Medicare, much less any *claims* submitted to such payors. This fails to satisfy Rule 9(b). To survive a motion to dismiss, Relator must allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted" to satisfy Rule 9(b). *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 156 (3d Cir. 2014).

Relator's Amended Complaint is devoid of any examples of claims submitted to any non-Medicare Government payors. Relator's Amended Complaint includes 50 patients who she says she chose "at random from the ZPM database." AC ¶¶ 141, 145. *She describes them all as Medicare patients*. *Id.* ¶¶ 141–56. Relator's failure to allege any details that could lead to an inference that false claims were submitted to any other payor dooms her FCA and state law counts to the extent they allege false claims submitted to non-Medicare Government payors.

### 5. *Relator Has Not Sufficiently Pled Nationwide Claims*

Relator's claims must be dismissed for the additional reason that she purports to bring a nationwide case but offers no plausible or particularized basis for doing so. "It is well-established that [a] blanket pleading that alleges a nationwide scheme in violation of the FCA but only provides specific examples of behavior violating the FCA in one jurisdiction fails to satisfy the particularity requirement of Rule 9(b)." *Shannon*, 2025 WL 984353, at *11 (cleaned up) (quoting *U.S. ex rel. Travis v. Gilead Scis., Inc.*, 596 F. Supp. 3d 522, 543 (E.D. Pa. 2022)). Relator cannot, as she does, rely on generalized and conclusory pleadings premised on the assumption that alleged conduct occurred nationwide. *See U.S. ex rel. Forney v. Medtronic, Inc.*, No. 15-cv-6264, 2017 WL 2653568, at *5 (E.D. Pa. June 19, 2017) (dismissing claims under 29 state FCAs where relator claimed kickback scheme was "nationwide" and defendant engaged in "nationwide marketing"

but failed to "reference any actual claims, services, providers, or conduct located outside" of one state).

Relator has not alleged facts to justify unleashing nationwide discovery. As Territory Manager, Relator covered only the southwest portion of Puerto Rico between 2017 and 2022. AC ¶ 17. Remarkably, Relator fails even to identify where her exemplar patients were located and instead attempts to meet her burden by vaguely alleging that she participated in national meetings and conversations with sales representatives around the country. *Id.* ¶¶ 17, 161, 167. This is not enough. *See, e.g.*, *U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 11-cv-962, 2013 WL 2303768, at *7 (N.D. Ga. May 17, 2013) (rejecting relators' assertion that nationwide conduct could be inferred because there was no reason to conclude defendants had "different policies . . . in different states"); *U.S. ex rel. George v. Fresenius Med. Care Holdings, Inc.*, No. 12-cv-877, 2014 WL 12607797, at *7 (N.D. Ala. Mar. 31, 2014) (rejecting claims of "nationwide scheme" where relators' "knowledge deal[t] primarily with conduct they witnessed in Alabama or in the geographic area [Relator] oversaw"). Because Relator attempts to bring a nationwide case but offers no facts to support such a case, this Court should dismiss all of her claims.

**B. Relator Fails to Sufficiently Plead Materiality**

Materiality is a separate element of every FCA count, and failure to plead facts supporting it is grounds for dismissal under Rules 9(b) and 12(b)(6). *See Escobar*, 579 U.S. at 195 n.6; *Petratos*, 855 F.3d at 489 n.2. There can only be an FCA violation where the alleged violation is material to the Government's decision whether to pay the claim. *See Escobar*, 579 U.S. at 192. "Under any understanding of the concept, materiality 'look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'" *Id.* at 193 (quoting 26 Richard A. Lord, Williston on Contracts § 69:12 (4th ed. 2003)). The "materiality standard is demanding" and

"rigorous." *Id.* at 192, 195 n.6. To determine whether an alleged FCA violation is "material," courts consider a variety of factors, including: (1) whether the legal requirement is a "condition of payment"; (2) whether the alleged violation "goes to the essence of the bargain" or is "insubstantial"; and (3) the government's (in)action in the wake of the Defendants' alleged fraud. *U.S. ex rel. Druding v. Care Alts.*, 81 F.4th 361, 367 (3d Cir. 2023); *Petratos*, 855 F.3d at 489. Relator fails to meet her burden—she has pleaded no facts suggesting that any payor would not have paid claims for the LifeVest had it known that patients were using it less than daily.

### 1. *Boilerplate and Conclusory Allegations are Insufficient to Plead Materiality*

Relator's scant materiality allegations only concern Medicare FFS claims, and as to those, all she does is: (1) assert that the continued use guidance for the LifeVest is a "mandatory condition of payment," (2) claim in a conclusory fashion that "Medicare will not continue to pay rent for a DME item that a patient is not using," and (3) allege in Counts 1 and 2 (her federal FCA counts) that "[i]f the Government had known about the violations, the Government would not have paid for the claims." AC ¶¶ 118, 158, 246, 252.

The Supreme Court and courts across the Third Circuit have repeatedly held that such boilerplate allegations and non-specific assertions about purported conditions of payment are not enough to establish materiality under the FCA. *See Escobar,* 579 U.S. at 193–96; *see, e.g., Petratos*, 855 F.3d at 490 (holding that the relator's allegations did not meet the "high standard" for materiality and explaining that "[t]he mere fact that § 1395y is a condition of payment, without more, does not establish materiality"); *U.S. ex rel. Sirls v. Kindred Healthcare, Inc.*, 469 F. Supp. 3d 431, 450 (E.D. Pa. 2020) ("Relator's references to boilerplate language conditioning payment under Medicare and Medicaid on compliance with all laws and regulations are not sufficient to satisfy the demanding standard established in *Escobar*."). A misrepresentation is not material

"merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment ... [or because] the Government would have the option to decline to pay if it knew of the defendant's noncompliance." *Petratos*, 855 F.3d at 489 (quoting *Escobar*, 579 U.S. at 194). Relator offers no specific facts to support her allegation that Medicare would not have paid the claims had it known about the allegations, and as such, Relator's allegations do not satisfy Rule 9(b)'s particularity standard and should be dismissed on that basis alone.

Beyond that, Relator *cannot* allege materiality here. As discussed previously, CMS has promulgated specific continued use guidance for certain types of devices (e.g., CPAP), but not for the LifeVest. *See supra* n.2. If "continued use" in the (incorrect) manner Relator advocates were truly material, CMS would have promulgated payment guidance that required it, *i.e.*, utilization all the time except for bathing. CMS elected not to do so, underscoring that the purported violations Relator alleges were not material to payment. This makes sense, where the LifeVest is a temporary, critical, life-saving device ordered by physicians for at-risk acute cardiac patients who stand to benefit from the device even if not wearing it all the time. *See supra* Background Section I.

### 2. The Complaint Also Fails to Allege Materiality as to Other Payors

Relator's materiality pleading failures as to claims submitted to Government payors other than Medicare FFS are even more acute. She simply says nothing about, and certainly does not plead any facts plausibly alleging, that any such payor would have declined to pay ZOLL's claims had they known of a patient not using the device as much as Relator would like. Just as her claims fail because she has not pled falsity as to such other payors, they fail for failure to plead materiality.

Independently, Relator's claims based on managed care payors of Government benefits (e.g., Medicare Advantage or managed Medicaid payors) must be dismissed because Relator has

not and cannot plead materiality. Managed care payors receive from the Government a fixed, capitated (per head) rate for each beneficiary, irrespective of how much care or services the beneficiary actually receives in a given year. AC ¶ 47. Where fixed-rate payments are involved, a relator must allege facts that plausibly demonstrate a connection between false claims and increased capitated payments, and courts in the Third Circuit routinely dismiss FCA claims that fail to do so. *See, e.g., U.S. ex rel. Mbabazi v. Walgreen Co.*, No. 19-2192, 2021 WL 4453600, at *6 (E.D. Pa. Sept. 28, 2021) (dismissing FCA claims on materiality grounds because the case involved fixed-rate claims, noting that in cases involving fixed-rate Medicare payments, "courts have held that there is no FCA liability where a falsely-claimed service or item does not affect the rate of reimbursement" (quoting *Kindred Healthcare, Inc.*, 469 F. Supp. 3d at 445)).

Here, Relator has not alleged a single fact suggesting that any alleged actions by ZOLL increased the capitated payments received by managed Medicaid payors or the Medicare Advantage program. Relator's claims associated with managed care payors must be dismissed.

## C. Relator Fails to Plead that ZOLL Acted Knowingly

Relator's Amended Complaint fails for the additional reason that she has not sufficiently alleged knowledge, another independent element of an FCA claim. *See* 31 U.S.C. 3729(a)(1)(A)-(B). To adequately plead knowledge under the FCA, a relator must plausibly allege that the defendant had actual knowledge of the claims' falsity, acted in deliberate ignorance of the truth or falsity of the claims, or acted in reckless disregard for the claims' truth or falsity. *See* 31 U.S.C. 3729(a)(1)(A)-(B); *U.S. ex rel. Streck v. Allergan, Inc.*, 894 F. Supp. 2d 584, 591 n.6 (E.D. Pa. 2012), *aff'd* 746 F. App'x. 101 (3d Cir. 2018). Relator fails to meet her burden.

Even if this Court were to find Relator sufficiently pleaded falsity, which would require a finding that ZOLL's interpretation of the relevant guidance was incorrect, ZOLL still cannot have

acted "knowingly" as a matter of law because its interpretation was reasonable based on the language of the guidance itself. That guidance explicitly contemplates a record of use within the preceding 12 months as sufficient documentation to support billing. LCA A55426. When a defendant submits claims based on reasonable interpretations of legal requirements, there can be no scienter. *See, e.g.*, *Allergan*, 746 F. App'x. at 106 (dismissing claims for failure to plead knowledge where statute defining term was ambiguous, noting the "FCA does not reach an innocent, good-faith mistake about the meaning of an applicable rule or regulation"); *U.S. ex rel. Sheldon v. Forest Lab'ys, LLC*, 754 F. Supp. 3d 615, 648 (D. Md. 2024), *appeal filed sub nom.*, *U.S. ex rel. Sheldon v. Allergan Sales, LLC,* 24-1793 (3rd Cir. Aug. 15, 2024) (granting motion to dismiss because "by considering the statutory definition alone, [the defendant] could not have acquired any of the three mental states required for liability under the FCA…given the Rebate Statute's ambiguity").[6]

ZOLL's interpretation of the guidance was reasonable. The Article states that ZOLL must obtain documentation of continued use once every 12 months. There is no other guidance, even though CMS or its MACs could have promulgated it. *See supra* Argument Section I.A.2. Further, to adopt Relator's version of the continued use requirements, which she suggests must include constant monitoring and cessation of billing immediately upon a pause in use, would contradict the explicit language of the Article regarding documentation every 12 months and render it

---

[6] The Supreme Court's decision in *U.S. ex rel. Schutte v. SuperValu Inc*. is not applicable here. 598 U.S. 739 (2023). In *Schutte*, the Supreme Court held that if a defendant acts on an interpretation of a complex or ambiguous rule that is wrong, and *knows it is wrong*, the defendant can be liable for false claims. *Id.* at 757. *Schutte* does not reach scenarios where, as here, the defendant submitted claims based on an objectively reasonable interpretation of the law and there are no allegations that it did not believe its interpretation.

meaningless. To the extent the Court finds ambiguity in the guidance (which ZOLL does not believe exists), that must be construed in ZOLL's favor. *See Sheldon*, 754 F. Supp. 3d at 645–54 (finding, based on ambiguity in statute and related regulations, that relator did not adequately plead scienter). Relator has not pleaded knowledge, and her claims must be dismissed.

### D. Relator Fails to Adequately Plead a False Records claim under 31 U.S.C. 3729(a)(1)(B)

Relator also alleges that ZOLL made "false record[s] or statement[s] material to a false or fraudulent claim" in violation of 31 U.S.C. § 3729(a)(1)(B). *See* AC ¶¶ 248–53 (Count 2). A false records claim requires allegations of false statements or records independent of the alleged false claims. *See U.S. ex rel. Int'l Bhd. of Elec. Workers Local Union No. 98 v. The Fairfield Co.*, 438 F. Supp. 3d 348, 389 (E.D. Pa. 2020). The Amended Complaint contains no facts at all suggesting that there were any false records created or used by ZOLL in connection with its submission of claims to the government. The claim must be dismissed for this reason alone. Beyond that, a false records claim requires the same elements as a false presentment claim under § 3729(a)(1)(A), including falsity, materiality, and scienter. *See U.S. ex rel. Behnke v. CVS Caremark Corp.*, No. 14-cv-824, 2025 WL 1758623, at *8 (E.D. Pa. June 25, 2025). Relator's failure to plead that ZOLL submitted claims that were false, materially so, and with knowledge, as discussed above, likewise requires dismissal of Count 2. *See supra* Argument Section I.A–C.

## II. Relator's State Law Claims Should be Dismissed

### A. Relator's State FCA Claims (Counts 3, 6–13, 15–17, 19–35) Fail for the Same Reasons as the Federal FCA Claims

Relator alleges violations of the 28 state FCAs based upon the same conduct that she

contends violates the federal FCA.[7] State FCAs address allegedly false claims for payment submitted to state payors, such as state Medicaid programs. Relator alleges that the state FCAs under which she brings claims are otherwise analogous to the federal FCA. AC ¶¶ 11, 27. As such, Relator's failure to adequately allege a violation of the federal FCA against ZOLL, *see supra* Argument Section I, therefore similarly condemns her state FCA claims. *See Shannon*, 2025 WL 984353, at *11 (dismissing state FCA claims where Relator failed to "allege that the state false claim statutes under which he assert[ed] his state false claims act claims differ[ed] in any material way from the federal FCA").

Moreover, as discussed previously, Relator has not even identified the payment rules of any state payor or any claims submitted to any such payor. *See supra* Argument Section I.A.3–4. As such, she cannot possibly have pleaded a violation of any state's FCA as a matter of law.

### B. Relator's Claims Under the New Mexico False Claims Act Should be Dismissed

Relator's claim under the New Mexico Medicaid False Claims Act ("NMMFCA") (N.M. Stat. Ann § 27-14-1, *et seq.*), AC ¶¶ 304–305 (Count 25), fails for an additional reason. Under § 27-14-7(C), following receipt of the complaint, the New Mexico health care authority has 60 days (plus extensions) to investigate the suspected violations. If, as here, the state declines to intervene, the relator can only proceed "*if* **the department determined that there is substantial evidence that a violation of the Medicaid False Claims Act has occurred**." N. M. Stat. Ann. § 27-14-7(E) (emphasis added); *see also* N.M. Stat. Ann. § 27-14-7(C); *U.S. ex rel. Cestra v. Cephalon, Inc.*,

---

[7] In accordance with the Maryland False Health Claims Act, Md. Code Ann.., Health Gen. § 2-604(a)(7), the State of Maryland, having declined to intervene in this matter, requested that all claims asserted on behalf of the State of Maryland be dismissed without prejudice, which the Court granted on April 9, 2025. ECF Nos. 19, 20. Count 18 of the AC has therefore already been dismissed.

No. 14-1842, 2015 WL 3498761, at *14 (E.D. Pa. June 3, 2015). Here, there is no allegation that New Mexico made a determination of substantial evidence of a violation, even though that is a prerequisite to Relator proceeding. Her claim under the NMFCA is therefore barred. *Cestra*, 2015 WL 3498761, at *14 (dismissing complaint on grounds that state had not made the requisite determination).

### C. Relator's Claims under CIFPA and IICFPA Should be Dismissed (Counts 4–5, 14)

Relator also alleges violations of the California Insurance Fraud Prevention Act ("CIFPA") and the Illinois Insurance Claims Fraud Prevention Act ("IICFPA") which, in addition to prohibiting conduct similar to the FCA, contain provisions similar to the federal Anti-Kickback Statute targeting kickback schemes that unduly induce insurance claim submissions. AC ¶¶ 28–39, 256–62, 279–83; Cal. Ins. Code § 1871.7(a)-(b); Cal. Penal Code § 550(a); 740 Ill. Comp. Stat. 92/5(a)-(b); *see also* 42 U.S.C. § 1320a-7b. The CIFPA and the IICFPA apply only to claims submitted to private insurers. *See U.S. ex rel. CA Challenger LLC v. Emanate Health*, No. 22-cv-04168, 2024 WL 4868644, at *7–8 (C.D. Cal. Sept. 3, 2024); *U.S. ex rel. Nehls v. Omnicare*, No. 07 C 5777, 2011 WL 1059148, at *5 (N.D. Ill. Mar. 11, 2011). If these claims purport to be based on the submission of false claims to insurance programs in California and Illinois, they fail for all of the reasons previously discussed. To the extent Relator purports to bring "kickback" claims under these statutes, these claims also must be dismissed.

#### 1. Relator's Kickback Allegations under the CIFPA and the IICFPA Fail

Relator's allegations under the CIFPA and IICFPA are bare bones, buried in Counts 4, 5, and 14, with no particulars alleged other than the statutory text. These claims are nothing more than gratuitous add-ons, supported by no facts.

Subsection (a) of the CIFPA provides, "It is unlawful to knowingly employ runners, cappers, steerers, or other persons … to procure clients or patients to perform or obtain services or benefits under a contract of insurance or that will be the basis for a claim against an insured individual or their insurer." Cal. Ins. Code § 1871.7(a). The IICFPA closely tracks Section (a) of the CIFPA. *See State ex rel. Leibowitz v. Fam. Vision Care, LLC*, 128 N.E.3d 422, 428 (Ill. App. Ct. 2019). Both statutes require the same basic elements, consistent with the federal AKS, which are that Relator must sufficiently allege that ZOLL: (1) knowingly; (2) offered or paid remuneration; (3) to induce a person to procure patients; (4) to obtain services or benefits; (5) under an insurance contract or that will be the basis of an insurance claim. Because claims under both statutes involve allegations of fraud, they must be plead with particularity pursuant to Rule 9(b). See *U.S. v. Chang*, No. CV 13-3772, 2017 U.S. Dist. LEXIS 226194, at *44 (C.D. Cal. July 25, 2017) (applying heightened pleading standard to CIFPA claims); *Nehls*, 2011 WL 1059148, at *5 (same as to IICFPA claims). Relator has failed to meet her pleading burden for several reasons.

*First*, to the extent Relator's claims are based on her allegations relating to the Coordinators of Patient Administration ("CoPAs") (*see, e.g.,* AC ¶¶ 181–84, 187), the state statutes are preempted by the federal AKS and its safe harbors. A state law that "stands as an obstacle to the … objectives of Congress" is preempted by conflict with federal law. *Mabey Bridge & Shore, Inc. v. Schoch*, 666 F.3d 862, 868 (3d Cir. 2012) (quoting *Elassaad v. Indep. Air, Inc.*, 613 F.3d 119, 126 (3d Cir. 2010)). Relator alleges that ZOLL employed CoPAs to obtain LifeVest reorders. AC ¶¶ 181, 227–28. This is exactly the type of conduct that Congress expressly authorized under the federal AKS's employment safe harbor. 42 U.S.C. § 1320a-7b(b)(3)(B) (exempting from the AKS's prohibitions on remuneration "any amount paid by an employer to an employee (who has a bona fide employment relationship with such employer) for employment in the provision of

28

covered items or services"); *see also* 42 C.F.R. § 1001.952(i); *Carrel v. AIDS Healthcare Found.*, 898 F.3d 1267, 1274–75 (11th Cir. 2018) (holding that incentive payments to a bona fide employee were protected); *U.S. v. Borrasi*, 639 F.3d 774, 781–82 (7th Cir. 2011) (affirming a jury instruction that required finding some payment was paid outside of a bona fide employment relationship to convict). The employment safe harbor represents a calculated judgment from Congress that certain relationships, due to a reduced risk of abuse, should be exempted from scrutiny under the AKS. *See, e.g., U.S. v. Blair*, No. 19-00410, 2021 WL 4339132, at *25 (D. Md. Sept. 23, 2021) ("In 1987, Congress again amended the fraud and abuse prohibitions of the AKS in response to concerns that the AKS could prohibit certain types of beneficial business relationships."); *U.S. v. Crinel*, No. 15-61, 2015 WL 3755896, at *5 (E.D. La. June 16, 2015) ("Congress enacted this exception because it assumed employers would exercise an appropriate degree of supervision over their employees, thereby reducing the potential for abusing the Medicare program.").

The AKS's safe harbor indicates "clear congressional intent to exempt compensation paid by employers to bona fide employees[.]" *State v. Harden*, 938 So. 2d 480, 493 (Fla. 2006) (holding Florida's anti-kickback statute preempted by the federal AKS, in part, because the Florida statute lacked a safe harbor provision for employment). Neither CIFPA nor IICFPA contain safe harbor provisions for bona fide employment and instead directly conflict with the federal determination, rendering payments to employees a civil offense. *See* Cal. Ins. Code § 1871.7(a)-(b); 740 Ill. Comp. Stat. 92/5(a)-(b). The statutes scrutinize these employment relationships and reach conduct that "federal law specifically intended to be lawful[,]" making them "an obstacle to the accomplishment of the purposes of" the AKS. *See Harden*, 938 So. 2d at 493. The statutes are therefore preempted.

*Second,* to the extent CIFPA and IICFPA are not preempted, Relator does not identify the conduct that she alleges violates these statutes. For each count in the Amended Complaint, she merely incorporates by reference the preceding paragraphs and parrots the statutory text. AC ¶¶ 256–62, 279–83. "Rule 8 requires that a complaint provide fair notice of 'what the ... claim is and the grounds upon which it rests.'" *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (citation omitted). If Relator is relying on her allegations concerning CoPAs, Relator fails to plead that ZOLL acted "knowingly," which requires "facts supporting an inference that [the] defendant intended to act in a way it knew was wrongful." *See U.S. ex rel. Lagatta v. Reditus Lab'ys, LLC*, No. 22-cv-01203, 2024 WL 4351862, at *20 (C.D. Ill. Sept. 30, 2024) (citation and internal quotations omitted). As Relator admits, CoPAs were hired by ZOLL to fill an administrative role, "work[ing] with the Zoll sales team … supporting the administrative side of the sales process" and "assisting and supporting Zoll's billing and revenue collection processes." AC ¶ 182. Relator alleges that the CoPAs did not present a patient's past history of use to the providers upon reorder, *id.* ¶¶ 229–30, but Relator admits there was no legal obligation to provide that information, *id.* ¶ 217, and does not otherwise allege any facts to suggest that the CoPAs were hired to engage in any other purportedly wrongful conduct. These allegations also do not suffice to allege that the CoPAs were employed for the purpose of identifying or procuring patients. *See State ex rel. Wilson v. Super. Ct.*, 227 Cal.App.4th 579, 593 (2014).

Relator also fails to adequately plead remuneration or that such remuneration induced the CoPAs to obtain more reorders—all she offers is allegations regarding a "generous salary" and "commission per reorder…beyond their sales goal," AC ¶ 228, leaving out details such as sales targets, the dollar amounts of the commission and salary, and any allegation that such commission contributed to more reorders, which is not enough to meet even the Rule 8(a) pleading standard,

let alone Rule 9(b). Indeed, nothing about her allegations suggest the CoPAs were paid above fair market value or that their compensation was otherwise problematic. *Cf. Bingham v. HCA, Inc.*, 783 F. App'x 868, 874 (11th Cir. 2019) (granting summary judgment where relator failed to show any benefit exceeding fair market value); *U.S. ex rel. PCTLS, LLC v. Nw. Mem'l Healthcare*, No. 19-cv-00593, 2023 WL 6388328, at *5 (N.D. Ill. Sept. 29, 2023) (dismissing AKS case in which plaintiff failed "to allege how the relevant transaction—the sale of tests—was not consummated at fair market value").

*Third*, as discussed in Section I.A.5 above, Relator fails to allege any details whatsoever as to California or Illinois specifically, including information regarding any insurance contract or private insurer in either state. *See U.S. ex rel. Gharibian v. Valley Campus Pharmacy, Inc.*, No. 16-cv-04777, 2021 WL 4816648, at *14 (C.D. Cal. June 23, 2021) (dismissing IICFPA claim because relator did not allege facts "showing attachment to Illinois"); *U.S. v. Crescendo Bioscience, Inc.*, No. 16-cv-02043, 2020 WL 2614959, at *6 (N.D. Cal. May 23, 2020) ("[T]aken as a whole, section 1871 et seq. is specifically tailored toward preventing and punishing the making of fraudulent claims to *insurance companies*." (quoting *State of Cal. ex rel. Metz v. CCC Info. Servs., Inc.*, 149 Cal. App. 4th 402, 413 (2007) (emphasis added))). Relator plainly had access to patient information, including billing information, AC ¶¶ 155–56, and yet failed to allege any details regarding any conduct that occurred, or claims submitted to payors, in Illinois or California. Such deficiencies are not sufficient to meet even the Rule 8 plausibility standard.

### 2. *Relator's Claims under Section (b) of the CIFPA and § 550(a) of the California Penal Code Should Also Be Dismissed (Count 5)*

Section (b) of the CIFPA provides penalties for violations of, among other things, a violation of Cal. Penal Code § 550(a), which makes it unlawful to "(1) Knowingly present or cause

to be presented any false or fraudulent claim for the payment of a loss or injury, including payment of a loss or injury under a contract of insurance [and] (5) Knowingly prepare, make, or subscribe any writing, with the intent to present or use it, or to allow it to be presented, in support of any false or fraudulent claim." AC ¶¶ 259–62 (Count 5).

Relator fails to plead that ZOLL acted "knowingly." Under PC § 550, "knowingly" has been interpreted to require a "specific intent to defraud." See *People v. Blick*, 153 Cal. App. 4th 759, 774 (2007) ("[S]pecific intent to defraud" is an element of "all section 550, subdivision (a) offenses"). For the same reasons described in Section I.C above, Relator has failed to allege that ZOLL acted knowingly, let alone with a specific intent to defraud. Further, as Relator admits, there is no legal requirement that ZOLL affirmatively tell providers about non-usage (information that doctors can access themselves from the ZPM). AC ¶ 217.

Relator's claims under subsection (b) also fail because Relator did not (1) identify any private insurers in California; (2) identify any continued use requirements for any private insurers or any other grounds for the falsity of claims submitted to private insurers; or (3) identify any claims submitted to private insurers. *See CA Challenger LLC*, 2024 WL 4868644, at *7 (dismissing subsection (b) claim because relator did not allege submission of false claims to private insurers).

\*　　\*　　\*

Finally, to the extent Relator's claims under the CIFPA or the IICFPA survive, they must be limited to claims made to California private payors regulated by the California Department of Insurance and Illinois private payors as discussed above and to no more than three years prior to the filing of Relator's Complaint. Both the CIFPA and the IICFPA have a three-year statute of limitations, accruing upon the discovery of the violation. Cal. Ins. Code § 1871.7(l)(1); 740 Ill. Comp. Stat. 92/45(a). Here, Relator's claims are purportedly based on conduct occurring as far

back as 2017. AC ¶ 140. Because Relator filed the Complaint on November 8, 2022, any claims based on conduct prior to November 8, 2019 are time-barred.

## III.    Relator's *Qui Tam* Claims Should be Dismissed as Unconstitutional

The *qui tam* provisions of the FCA are unconstitutional under Article II of the U.S. Constitution. *See U.S. ex rel. Zafirov v. Fla. Med. Assocs., LLC*, 751 F. Supp. 3d 1293, 1324 (M.D. Fla. 2024), *appeal docketed*, Nos. 24-13581, 24-13583 (11th Cir. Oct. 30, 2024) (holding that a relator's authority pursuant to the *qui tam* provision "directly defies the Appointments Clause by permitting unaccountable, unsworn, private actors to exercise core executive power with substantial consequences to members of the public"); *see also Wis. Bell, Inc. v. U.S. ex rel. Heath*, 145 S. Ct. 498, 515 (2025) (Kavanaugh, J., concurring) ("The Act's *qui tam* provisions raise substantial constitutional questions under Article II."); *Polansky*, 599 U.S. at 451 (Thomas, J., dissenting) ("In short, there is good reason to suspect that Article II does not permit private relators to represent the United States' interests in FCA suits."); *id*. at 442 (Kavanaugh, J., joined by Barrett, J., concurring) (agreeing with Justice Thomas that "[t]here are substantial arguments that the *qui tam* device is inconsistent with Article II and that private relators may not represent the interests of the United States in litigation"); *U.S. ex rel. Montcrief v. Peripheral Vascular Assocs., P.A*., 133 F.4th 395, 410-12 (5th Cir. 2025) (Duncan, J., concurring) (stating that the FCA "defies" the Constitution "twice over" and that he "hop[ed] this anomalous practice will someday come to an end"); *but see U.S. ex rel. Penelow v. Janssen Prods.*, *LP,* No. 12-7758, 2025 WL 937504, at *12 (D.N.J. Mar. 28, 2025), *appeal docketed*, No. 25-1818 (3d Cir. Apr. 29, 2025) (finding *qui tam* provisions are constitutional).

Allowing this declined case to proceed would (1) wrongly permit Relator to serve as an "Officer[] of the United States" outside the fundamental safeguards of the Appointments Clause,

*see* U.S. Const. art. II, § 2, cl. 2, and (2) contravene the Executive's exclusive prerogative to "take Care that the Laws be faithfully executed," *id.* art. II, § 3. For these reasons, the Court should dismiss Relator's Amended Complaint with prejudice.

## CONCLUSION

The Amended Complaint should be dismissed in its entirety with prejudice for the reasons set forth above. In summary:

- The federal FCA counts (Counts 1 and 2) should be dismissed because Relator has not pleaded, and cannot plead, the essential elements of falsity, materiality, and knowledge.

- The state FCA counts (Counts 3, 6–13, 15–17, 19–35) should be dismissed for the same reasons as the federal counts. (Count 18 has already been dismissed).  In addition, the New Mexico Medicaid FCA claim (Count 25) should be dismissed for failure to satisfy additional requirements of that statute.

- The CIFPA and IIFPA (Counts 4–5, 14) claims should be dismissed because they are preempted and Relator otherwise fails to plead these statutes were violated.

- Relator's federal FCA claims should be dismissed because they are unconstitutional.

/s/ *Mark W. Pearlstein*

Jessica Greer Griffith (PA 332932)
MᴄDᴇʀᴍᴏᴛᴛ Wɪʟʟ & Sᴄʜᴜʟᴛᴇ LLP
One Vanderbilt Avenue
New York, NY 10017
Tel: 212-547-5578
ggriffith@mwe.com

Mark W. Pearlstein (*pro hac vice*)
Laura McLane (*pro hac vice*)
Natasha L. Dobrott (*pro hac vice*)
Max Doherty (*pro hac vice*)

MCDERMOTT WILL & SCHULTE LLP
200 Clarendon Street, Floor 58
Boston, MA 02116
Tel: 617-535-4000
mpearlstein@mwe.com
lmclane@mwe.com
ndobrott@mwe.com
mdoherty@mwe.com

*Attorneys for ZOLL Medical
Corporation*

Dated: August 5, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 5, 2025.

By: */s/ Mark W. Pearlstein*